IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | **Criminal No. 05-0383** |
| | ) | **Electronically Filed** |
| NOEL CLIVE | ) | |

**MEMORANDUM AND ORDER OF COURT DENYING
DEFENDANT'S MOTION FOR HABEAS CORPUS RELIEF
UNDER 28 U.S.C. § 2255 (DOC. NO. 59)**

**I. Introduction and Background.**

Presently before the Court is Defendant Noel Clive's Habeas Corpus Motion to Vacate Sentence Under 28 U.S.C. § 2255 ("Motion to Vacate"). (Doc. No. 59). After careful consideration of petitioner's motion and memoranda of law, the government's response and memorandum in opposition, and review of the plea agreement and transcripts of the change of plea and sentencing hearings, the Court will deny petitioner's Motion to Vacate.

On July 10, 2006, Petitioner pleaded guilty to Count Two of a two-count indictment, charging him with interstate travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b) & (e),[1] and acknowledged responsibility for the conduct charged in Count

---

[1] 18 U.S.C. § 2423(b) & (e) provides:

(b) Travel with intent to engage in illicit sexual conduct.-- A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.
\* \* \*
(e) Attempt and conspiracy.--Whoever attempts or conspires to violate subsection (a), (b), (c), or (d) shall be punishable in the same manner as a completed violation of that subsection.

1

One, accusing petitioner of coercion and enticement of a minor in violation of 18 U.S.C. §2422(b).[2] As part of his plea agreement, Petitioner waived "the right to take a direct appeal from his conviction or sentence under 28 U.S.C. § 1291 or 18 U.S.C. § 3742," as well as the "right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction." Plea Agreement (Doc. No. 42) at 3. On October 27, 2006, this Court sentenced Petitioner to a term of imprisonment of 57 months and a ten-year term of supervised release. *See* Minute Entry, October 27, 2006 (Doc. No. 55) at 1. The Judgment and Commitment Order was entered on November 13, 2006. (Doc. No. 56). No appeal was filed.

On December 10, 2007, Petitioner filed his Motion to Vacate. By Order dated January 23, 2008, Miller Notice and Order (Doc. No. 60), this Court directed defendant to make a "*Miller*" election. See *United States v. Miller*, 197 F.3d 644, 652 (3d Cir. 1999). The *Miller* notice advised Petitioner of his option to either have his motion ruled upon as filed or withdraw the motion and file one all-inclusive Section 2255 petition within the one-year statutory period under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244.

Petitioner rejected the option to re-characterize his motion and insisted that this Court review his Motion to Vacate as filed, as supplemented, however, by a Memorandum of Facts and

---

[2] 18 U.S.C. § 2422(b) provides:

> (b) Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

2

Law in Support of and Supplement to Petitioner's 28 U.S.C. § 2255 Motion which he filed on February 22, 2008. (Doc. No. 62). Subsequently, on May 27, 2008, Petitioner filed a Motion to Amend his Motion to Vacate, requesting this Court to consider his initial Motion to Vacate, his Memorandum of Facts and Law in Support of and Supplement to Petitioner's 28 U.S.C. § 2255 Motion, and his argument in support of his motion to amend as one all-inclusive motion to vacate under Section 2255. Motion to Amend Petitioner's 28 U.S.C. § 2255 Motion (Doc. No. 67).[3]

This Court granted Petitioner's Motion to Amend on May 28, 2008. Order of Court Granting Motion to Amend Motion to Vacate Under 28 U.S.C. § 2255 (Doc. No. 68). The Order also directed the government to file a response to Petitioner's Section 2255 Motion and for Petitioner to show cause as to why his Motion to Vacate should not be dismissed as untimely. *Id.* at 3, 5. In More fully, the Order of Court stated as follows:

> The Court finds it appropriate to permit petitioner to so amend his motion to vacate, see *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999); Fed.R.Civ.P. 15(a), and, therefore, petitioner's Motion to Amend Petitioner's § 2255 Motion to Vacate Sentence Previously Filed Pro Se (Document 59), Supplemented by Petitioner's Miller Election, (Document 61) (doc. no. 67) is GRANTED.

### III. Response by Government

> The Court also deems it advisable to order a response to petitioner's amended motion to vacate, following filing of the transcript of petitioner's change of plea and sentencing hearings. Accordingly, the government is hereby directed to order the transcripts of said hearings to be prepared and filed forthwith, and to file a response within 30 days thereafter, but in no event later than July 18, 2008.

---

[3] Petitioner also filed a Motion for Immediate Default Judgment (doc. no. 63) on the grounds that the government had "failed" to respond to his Motion to Vacate. This Court denied that misguided motion because, under "Rules 4(b) and 5(a) of the Rules Governing Section 2255 Proceedings, the government was and is under no obligation to answer defendant's motion to vacate unless and until this Court would direct it to do so, and it has not done that." Order of May 14, 2008 (doc. no. 66), at 3.

3

# IV.

## RULE DIRECTED TO PETITIONER TO
## SHOW CAUSE WHY MOTION TO VACATE
## SHOULD NOT BE DISMISSED AS UNTIMELY

Petitioner's motion to vacate appears to be untimely under 28 U.S.C. §2255(f)(1) and (f)(4) ("(f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of – (1) the date on which the judgment of conviction becomes final; . . . (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."). Pursuant to the Federal Rules of Appellate Procedure, a defendant has ten business days to file a notice of appeal. Fed. R. App. P. 4(b)(1), 26(a). Where, as here, a defendant does not appeal from the judgment of conviction and sentence, it becomes final after the ten days for filing such an appeal expires. *E.g., United States v. Bass*, 2006 WL 3825151, *2 (E.D.Pa. 2006) ("petitioner's sentence became final ten days from the entry of the judgment, on March 6, 2001. Through the exercise of due diligence, petitioner could have discovered the facts supporting the pro se §2255 Motion on this date. Thus, the AEDPA limitations period for petitioner's §2255 Motion expired one year from March 6, 2001, on March 6, 2002." footnotes omitted).

Petitioner's judgment of conviction and sentence became final on November 23, 2006, the one year limitation for filing a motion to vacate expired on November [27], 2007, and petitioner did not file his initial motion to vacate until December 10, 2007, some [13] days out of time. Moreover, the matters raised in petitioner's all-inclusive motion to vacate all appear to be matters that were known or knowable in the exercise of due diligence prior to entering a plea of guilty. Thus it appears that petitioner's motion to vacate is untimely.

The United States Court of Appeals for the Third Circuit held, in *United States v. Bendolph*, 409 F.3d 155 (3d Cir. 2005), that a federal court hearing a post conviction relief motion has the authority to raise a statute of limitations issue *sua sponte*. However, the Court should ordinarily "give notice that a limitations problem may exist, as well as provide an opportunity for a habeas movant or petitioner to respond" to the Court's concerns. *Id*. at 165, n.15. There may be reasons not apparent on the record that could justify equitable tolling of the statute of limitations. See *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001). Accordingly,

On or before June 23, 2008, petitioner shall file a Response to Rule to Show Cause and Memorandum of Law, and shall show cause why his motion to vacate should not be dismissed as untimely pursuant to 28 U.S.C. § 2255(f).

Order of Court (doc. no. 68), at 3-5.

As the government notes in its timely Response to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. no. 71) at 3-4, petitioner has not filed a response to the Rule to Show Cause.

Petitioner argues in his Motion to Vacate that counsel was ineffective for advising him to enter into the plea agreement and related stipulations, and for his attorney's failure to file an appeal challenging his conviction and sentence pursuant to an unconstitutional statute. Petitioner contends that the statute under which he was convicted, 18 U.S.C. § 2423(b), exceeds Congress's power under the Commerce Clause. Although Petitioner recognizes that Section 2423(b) has been upheld by the courts as a "channels of commerce" regulation, *United States v. Lopez*, 514 U.S. 549, 558 (1995), he insists that the statute improperly "blurs critical distinctions between 'travel' and 'transportation,'" and "sidesteps the repeated direction from courts that commerce regulation be restricted to matters of 'substantial effect' on interstate commerce." Motion to Vacate (Doc. No. 59) at 15-16 of 53.

For the following reasons, the Petitioner's Motion to Vacate will be denied.

**II. Standards of Review.**

28 U.S.C. § 2255(b) provides:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render

5

> the judgment vulnerable to collateral attack, the court shall vacate
> and set the judgment aside and shall discharge the prisoner or
> resentence him or grant a new trial or correct the sentence as may
> appear appropriate.

When a motion is made under Section 2255, whether to conduct a hearing is within the sound discretion of the district court. In exercising that discretion, the court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record. Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992) (quoting *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)).

In order to successfully demonstrate ineffective assistance of counsel, a petitioner must establish that (1) the performance of counsel fell below an objective standard of reasonableness; and (2) the errors of counsel prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-92 (1984). The first prong of the *Strickland* test requires the defendant show that counsel's performance was actually deficient. *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). A court "deciding an actual ineffectiveness claim must judge the reasonableness of the counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. Counsel's conduct presumptively "falls within the wide range of reasonable professional assistance," and the defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689-90 (quoting *Michel v. Louisiana*, 350 U.S. 91, 93 (1955)).

The second prong of the *Strickland* test requires the defendant show that the deficient

performance so prejudiced the defense as to raise doubt as to the accuracy of the outcome of the trial or sentence. 466 U.S. at 693-94. The petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jermyn*, 266 F.3d at 282 (quoting *Strickland*, 466 U.S. at 693). A "reasonable probability," for the purposes of establishing prejudice, is "a probability sufficient to undermine confidence in the outcome." *Id.*

**III. Legal Analysis and Discussion.**

**A. Statute of Limitations**

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) amended the federal habeas statute by imposing a statute of limitations on federal prisoners requesting habeas corpus relief pursuant to 28 U.S.C. § 2255. Section 2255 provides in relevant part:

> A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

In the *Bendolph* case, the United States Court of Appeals for the Third Circuit recognized that "courts have the power to raise the ADEPA limitations issue *sua sponte* in cases arising under § 2255." 409 F.3d at 158. The Court of Appeals added that a district court's exercise of its *sua sponte* powers should be limited to the period when it undertakes preliminary consideration in accordance with Rule 4 of the Rules Governing Section 2255 Cases in the United States District Courts. *Id.* at 167. Since this Court is presently conducting a Rule 4 review, it is appropriate to raise the statute of limitations issue *sua sponte*.

In its Order of Court Granting Motion to Amend Motion to Vacate Under 28 U.S.C. § 2255, this Court raised the limitations issue *sua sponte*, directed the government to respond to Petitioner's habeas motion, and ordered Petitioner to show cause why his Section 2255 motion should not be dismissed as untimely. (Doc. No. 68) at 3-5. As noted, petitioner has not responded to the Rule to Show Cause.

The period of time for filing a habeas corpus petition under Section 2255 begins to run when the judgment becomes "final." 28 U.S.C. § 2255(f)(1). In *Kapral v. United States*, the Court of Appeals for the Third Circuit held:

> [A] judgment of conviction becomes final within the meaning of §2255 on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires. If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired.

166 F.3d 565, 577 (3d Cir. 1999).

This Court's judgment of sentence was rendered on November 13, 2006. Petitioner did not appeal the judgment within the ten-day window provided under Fed. R. App. P. 4(b)(1)(A). As a result, Petitioner's sentence became final, and the statute of limitations period for filing a Section 2255 motion starting running, on November 27, 2006.[4] *See e.g., Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005) (holding that for the purposes of Section 2255 motions, a federal criminal judgment becomes final when the time for filing a direct appeal expires); *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) (concluding that for purposes of the Section 2255 statute of limitations, an unappealed federal criminal judgment becomes final ten days after it is entered). Since Petitioner's Section 2255 motion for habeas corpus relief was untimely filed on December 10, 2007, it is barred by the one-year limitations period.

### B. Tolling the Statute of Limitations

"The one-year filing requirement is a statute of limitations, not a jurisdictional rule, and thus a habeas petition should not be dismissed as untimely filed if the petitioner can establish an equitable basis for tolling the limitations period." *Jones v. Morton*, 195 F.3d 153, 159 (citing *Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 617-18 (3d. Cir. 1998)). In *Jones*, the Court of Appeals for the Third Circuit held that "extraordinary" and "rare" circumstances are required for the granting of equitable tolling, such as when "(1) the defendant has actively misled the plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his

---

[4] This date reflects the passage of ten business days from the date of entry of judgment in accordance with Fed. R. App. Proc. 4(b)(1) and 26(a). The Court inadvertently stated, in its Order of Court Granting Motion to Amend Motion to Vacate Under 28 U.S.C. § 2255, that the statute of limitations expired on November 23, 2006. (Doc. No. 68) at 4.

9

rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum."[5] *Id.* "[A]ttorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances for equitable tolling" in non-capital cases. *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001).

While Petitioner did not respond to the Court's Rule to Show Cause, he offers some excuses for the late submission in his initial Motion to Vacate. First, he claims that because of his status as a *pro se* litigant, he "had to rely on his own understanding and research," and his untimely Section 2255 motion should therefore survive the one-year limitations deadline. Motion to Vacate (Doc. No. 59) at 4. Petitioner further asserts that "[b]ecause the objection is constitutional, defendant believes that the attached pleading survives . . . the one-year deadline on § 2255 motions." *Id.*

This Court, while sympathetic to the challenges faced by *pro se* litigants, finds no extraordinary circumstances meriting equitable tolling under the standards set forth in *Miller* and *Jones*. A petitioner's *pro se* status and ignorance of the law do not merit the tolling of the statute of limitations. *See Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2005) (holding that equitable tolling for AEDPA's one-year limitations period was not warranted when the defendant could

---

[5] The Court of Appeals for the Third Circuit has upheld equitable tolling in cases of Section 2255 Motions in a very limited set of circumstances. In *United States v. Miller*, 197 F.3d 644 (3d. Cir. 1999), the Court tolled the statute of limitations because the petitioner had filed his motion *before* the statute of limitations began to run. In *Adams v. United States*, 155 F.3d 582, 584 n. 2 (3d Cir. 1998), the statute of limitations was tolled because Adams still had time to file a Section 2255 motion when the district court issued its order. In *Mason v. Meyers*, 208 F.3d 414, 419 (3d Cir. 2000), the Court held that "if in the future a District Court failed to provide the necessary warnings prescribed in *Miller*, the statute of limitations should similarly be tolled to allow the petitioner an opportunity to file all of his claims in the correct manner." Defendant does not claim that such extraordinary circumstances exist in his case.

have brought his claim in a timely fashion had he exercised reasonable diligence); *Miller v. N.J. State Dep't of Corr.*, 145 F.3d at 618 ("Mere excusable neglect is not sufficient."); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (equitable tolling not justified by the fact that petitioner simply did not know about AEDPA time limitation).

Equally unconvincing is Petitioner"s "belief" that because his objection is of constitutional dimension, such an argument is somehow exempt from AEDPA's statute of limitations. Such "belief" is profoundly mistaken, has no support in the law, and falls drastically short of convincing this Court that the "principles of equity would make [the] rigid application [of a limitation period] unfair." *Miller v. N.J. State Dep't of Corr.*, 145 F.3d at 618 (citing *Shendock v. Dir., Office of Workers' Comp. Programs*, 893 F.2d 1458, 1462 (3d Cir. 1990) (*en banc*)). Section 2255, the mechanism created by Congress to implement the "Great Writ" for federal prisoners, provides that a petitioner "may move the court which imposed the sentence to vacate, set aside or correct the sentence" where, among other things, the petitioner asserts that "the sentence was imposed in violation of the Constitution." 28 U.S.C. § 2255(a). "Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)). Knowing that constitutional challenges form the backbone of habeas practice, Congress did not exempt such challenges from the statute of limitations, nor did it create a two-tiered limitations period with different time periods for constitutional challenges and "all others."

Petitioner's circumstances are not among those "rare" and "exceptional" conditions that

warrant deviation from the express rules of Congress. The statute of limitations, therefore, expired for Petitioner on November 27, 2006, and his Motion to Vacate must be dismissed as untimely.

### C. Waiver of Rights to Appeal and Collateral Attack

There is another insurmountable procedural barrier that bars habeas corpus relief in this case, namely, Petitioner's knowing, understanding and voluntary waiver of his rights to appeal and to collaterally attack his conviction and sentence.

A defendant's waiver of his right to appeal and to collaterally attack his sentence pursuant to a plea agreement will be upheld, as long as he does so knowingly and voluntarily. *United States v. Khattak*, 273 F.3d 557, 558, 563 (3d Cir. 2001) (holding that, as a matter of first impression, waivers of right to appeal are permissible if entered into knowingly and voluntarily, unless they work a miscarriage of justice, and that defendant's waiver of his appeal rights contained in a plea agreement was knowingly and voluntarily made); *United States v. Gwinnett*, 483 F.3d 200, 205 (3d Cir. 2007) (holding that the Court of Appeals would not review the merits of sentencing appeal because defendant knowingly and voluntarily waived her right to appeal). A few weeks ago, the United States Court of Appeals for the Third Circuit extended *Khattak*'s reasoning and holding to uphold a waiver of the right to file a section 2255 or other petition seeking collateral relief from a sentence. *United States v. Mabry*, ___ F.3d ___, 2008 WL 2875346 (3d Cir. 2008).

The *Mabry* case held that a defendant's waiver of his right to take a direct appeal and collateral challenge to his sentence was knowing and voluntary and, therefore, could and did bar claims of ineffective assistance of counsel arising from counsel's alleged failure to file a notice of

12

appeal as the defendant therein claimed he requested, and, further, that enforcing the waiver would not work a miscarriage of justice. In reaching that decision, the Court of Appeals noted that when a defendant has waived his right to assert collateral challenges, the Court's task on appeal from denial of collateral attack is to determine whether district court properly considered the validity of waiver, specifically examining the (1) knowing and voluntary nature of waiver, based on what occurred and what defendant contends, and (2) whether enforcement of waiver would work a miscarriage of justice. 2008 WL 2875346 at *4.

The Court of Appeals also, importantly, rejected Mabry's argument (one that had been adopted by several Courts of Appeals from other circuits) that, "under the Supreme Court's decision in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), a presumption of prejudice applies where counsel fails to file a requested appeal even if the defendant has waived his appeal rights, and that, somehow, this requires us to remand for an evidentiary hearing even in the face of a waiver of collateral review." 2008 WL 2875346 at *6. The Court found "no reason to presume prejudice amounting to a miscarriage of justice in such a situation where the attorney's filing of an appeal would constitute a violation of the plea agreement, relieving the government of its obligations as well." 2008 WL 2875346 at *7.

A court may invalidate such a waiver, however, if its enforcement would result in a "miscarriage of justice." *Khattak*, 273 F.3d at 563. In determining whether the enforcement of a waiver will result in such a grave injustice, a court may consider "the clarity of the error, its gravity, its character, the impact of the error on the defendant, the impact of correcting the error on the government and the extent to which the defendant acquiesced in the result." *Id.* The *Mabry* decision affirmed this standard as the correct approach for considering whether there was

13

a miscarriage of justice that might invalidate the waiver of the right to collaterally challenge a sentence, stating as follows:

> In the waiver context, we have adopted a common sense approach in determining whether a miscarriage of justice would occur if the waiver were enforced. In *Khattak*, 273 F.3d at 563, we endorsed the methodology of the Court of Appeals for the First Circuit, which suggested "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result" as factors to consider before invalidating a waiver as involving a "miscarriage of justice." *United States v. Teeter*, 257 F.3d 14, 25-26 (1st Cir. 2001). At the same time, we have declined to identify a list of specific circumstances which would give rise to, or constitute, a miscarriage of justice.
>
> As in any other case in which the waiver is alleged to bar collateral attack, here we look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver.

2008 WL 2875346 at *9.

Moreover, as the Supreme Court stated in *Blackledge v. Allison*, "[t]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations made in open court carry a strong presumption of verity." 431 U.S. 63, 73-74 (1977).

Petitioner challenges the validity of his express waiver of his rights to both appeal and collaterally attack his sentence on the grounds that it was not rendered knowingly and voluntarily. Petitioner claims that his attorney "pressured [him] to accept a plea agreement put forth voluntarily by the U.S. Attorney's office," and that "only after incarceration did [he] become aware of how much the defense attorney had undercut his case." Motion to Vacate (Doc. No. 59) at 4. His assertions simply are not supported by the record.

14

**1. Plea Agreement**

The language of the Petitioner's plea agreement is plain and unambiguous as to its purpose and effect to bind Clive, the Government and this Court to its provisions. It expressly includes a waiver of the rights to appeal and collaterally attack the conviction or sentence. The plea agreement provides in relevant part:

> 9. Noel Clive waives the right to take a direct appeal from his conviction or sentence under 28 U.S.C. § 1291 or 18 U.S.C. § 3742 subject to the following exceptions:
>
> (a) If the United States appeals from the sentence, Noel Clive may take a direct appeal from the sentence.
>
> (b) If (1) the sentence exceeds the applicable statutory limits set forth in the United States Code, or (2) the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines, Noel Clive may take a direct appeal from the sentence.
>
> The foregoing reservations of the right to appeal on the basis of specified issues do not include the right to raise issues other than those specified.
>
> Noel Clive further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attaching his conviction.

Plea Agreement (Doc. No. 42) at 3. Petitioner executed the plea agreement on July 10, 2006, acknowledging by his endorsement that he reviewed and discussed the plea agreement with his attorney, and that he accepted it in its entirety. *Id.* at 5.

**2. Change of Plea Hearing**

Prior to accepting Petitioner's guilty plea, this Court conducted a sentencing hearing pursuant to Fed. R. Crim. P. 11 and engaged Petitioner in a thorough and wide ranging colloquy. Of primary importance to the current motion, Petitioner acknowledged during this colloquy, on

two occasions, his knowing and voluntary waiver of his right "to file a motion to vacate sentence under Title 28 U.S.C. to collateral attack his sentence under Title 28 U.S.C. § 2255 for 'Habeas Corpus' relief, and other valuable rights to obtain 'collateral review' of [his] sentence." Transcript, Change of Plea Hearing, July 10, 2006, (Doc. No. 69) at 19-20. During the hearing, this Court confirmed that the Petitioner, a sophisticated and intelligent man, had read the plea agreement, discussed it with his attorney, and came to understand it before signing it. Petitioner also stated that he was completely satisfied with the advice and representation provided by his defense counsel. *Id.* at 18.

### 3. Sentencing Hearing

At the sentencing hearing, this Court advised Petitioner of his limited right to appeal both the guilty judgment and sentence imposed. This Court instructed Petitioner that "except as otherwise waived in the plea agreement, [he had] the right to appeal from the orders of the court . . . within ten days from [the day of sentencing]"; he was informed of his right to be represented by counsel on any appeal and to receive copies of all necessary records and transcripts at no cost; and he was advised that upon request, the Clerk of Court would immediately prepare and file a notice of appeal on his behalf. Transcript, Sentencing Hearing, October 27, 2006 (Doc. No. 70) at 63-64. Petitioner declared that he was satisfied with the service and representation provided by his lawyer and declined the opportunity to file a direct appeal, but indicated that if he decided to appeal, his attorney would file the appeal on his behalf within the ten-day period. *Id*.

### 4. Validity of the Waiver

The Plea Agreement, Change of Plea Hearing and Sentencing Hearing unequivocally demonstrate that the Petitioner made a knowing, voluntary and intelligent waiver of his rights to

16

appeal and to collaterally attack his sentence.

### 5. "Miscarriage of Justice" Review

If a court is satisfied that the defendant knowingly and voluntarily waived his rights of appeal and collateral attack, then it will not exercise its jurisdiction to review the merits of his appeal or collateral attack unless the result would work a miscarriage of justice. *See Gwinnette*, 483 F.3d at 203. Although the Court of Appeals for the Third Circuit left the miscarriage-of-justice determination open-ended in *Khattak,* it ruled in *United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007) that "[e]nforcing a collateral-attack waiver where constitutionally deficient lawyering prevented [the defendant] from understanding his plea or from filing a direct appeal as permitted by his plea agreement would result in a miscarriage of justice."

Petitioner does not contend in his Section 2255 motion, nor does it appear in the record, that deficient lawyering affected his ability to understand the terms and conditions of the plea agreement. To the contrary, transcripts from the change of plea and sentencing hearings reflect Petitioner's satisfaction with the services rendered by his attorney. Petitioner does claim, however, that defense counsel was ineffective in (1) advising him against filing a timely appeal, and (2) failing to appeal on his behalf. Memorandum in Support of and Supplement to Petitioner's 28 U.S.C. § 2255 Motion (Doc. No. 62) at 3.

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court addressed whether counsel may be found deficient for failing to file a notice of appeal absent specific instruction from the defendant not to do so. The Court, applying the two-part *Strickland* test, held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example,

17

because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. In undertaking this inquiry, as with all ineffective assistance claims, courts are to "take into account all the information counsel knew or should have known." *Id.* (citing *Strickland*, 466 U.S. at 690).

Unlike in *Roe* and *Shedrick*, the Petitioner herein fails to persuade this Court that counsel did not satisfy his "constitutionally imposed duty" to consult with his client. *Roe*, 528 U.S. at 480. In fact, Petitioner concedes that "[c]ounsel *repeatedly* advised [him] against filing timely Notice of Appeal." Memorandum in Support of and Supplement to Petitioner's 28 U.S.C. § 2255 Motion (Doc. No. 62) at 3 (emphasis added). Further undermining Petitioner's argument is his "[s]olemn declaration" before this Court at his change of plea and sentencing hearings that he was completely satisfied with his attorney's advice, service and representation. *Blackledge,* 431 U.S. at 74.

Moreover, in the *Mabry* case the Court of Appeals declined to extend the reach of *Roe v. Flores-Ortega*, stating as follows:

> *Enforcing the waiver is in line with justice, not a miscarriage of it.* The waiver meets the two-prong test we use to evaluate waivers in that it: 1) was knowing and voluntary, as the colloquy was sufficient and Mabry has not indicated that he did not understand it, and 2) does not work a miscarriage of justice.
>
> In closing, we note that, from an analytic standpoint, the concept of a "presumption of prejudice" flowing from ineffectiveness that fits very comfortably in the *Flores-Ortega* setting where there is no waiver really does not suit the situation in which a waiver is present. Without a waiver, the recognition of a defendant's right to an appeal is paramount and counsel's ineffectiveness clear, for the defendant was entitled to an appeal. With a waiver, that entitlement disappears, and the ineffectiveness of counsel in not pursuing a waived appeal is

> less than clear. The analysis of the waiver along the lines developed in our jurisprudence, which permits the court to refuse to enforce it if it would work a miscarriage of justice, allows consideration of fundamental fairness in a given situation.

2008 WL 2875346 at *8.

Petitioner has failed to make sufficient allegations in his motion to overcome the presumption of veracity accorded to his Rule 11 colloquy statements that his waiver of collateral attack was knowing and voluntary. Nor has the Petitioner shown that a manifest injustice will result from enforcing the waiver.

There is no fundamental fairness in refusing to address Petitioner's Commerce Clause claim on its merits. Petitioner's contention that the statute under which he was convicted, 18 U.S.C. § 2423(b), exceeds Congress's power under the Commerce Clause, U.S. Const. art. 1, § 8, cl. 3, is contradicted by controlling precedent. The Commerce Clause gives Congress power to regulate three types of activity: (1) "the use of channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce, . . . i.e., those activities that substantially affect interstate commerce." *Lopez*, 514 U.S. at 558-59.

The thrust of Petitioner's argument is that the statute under which he was convicted exceeds Congress's authority as defined by the Supreme Court's decisions in *Morrison* and *Lopez*. *See generally id.*; *United States v. Morrison*, 529 U.S. 598 (2000). Both *Morrison* and *Lopez*, however, involved challenges to statutes enacted pursuant to the third category described in *Lopez*: Congress's authority to regulate activities that "substantially affect" interstate

commerce. 514 U.S. at 559. As the Court of Appeals for the Third Circuit established in *United States v. MacEwan*, "we need not proceed to an analysis of *Lopez*'s third category when Congress clearly has the power to regulate such an activity under the first two." 445 F.3d 237, 240 (3d Cir. 2006).

Here, the statute under which Petitioner was convicted falls squarely within Congress's power to regulate the first category of activities described in *Lopez*. As the Court of Appeals for the Third Circuit held in *States v. Tykarsky*, 446 F.3d 458, 470 (3d Cir. 2006), "Section 2423(b) criminalizes *interstate travel* with intent to engage in illicit sexual conduct with a minor. As such, it regulates the use of the channels of interstate commerce."

**IV. Conclusion.**

In summary, the Court denies Petitioner's motion based (1) on its untimely filing; (2) his knowing, voluntary and intelligent waiver of his right to file a Section 2255 petition or other collateral attack; and (3) his failure to demonstrate that Section 2423(b) is constitutionally unsound and, therefore, failure to consider such an argument on its merits is fundamentally fair. For all of the foregoing reasons, this Court finds that Petitioner knowingly and voluntarily relinquished his right to collateral attack and that upholding his waiver will not result in a miscarriage of justice, and will deny Petitioner's Section 2255 motion.

An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: Petitioner and all counsel of record